UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CATHY M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02125-TAB-SEB |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.   Introduction**

Plaintiff Cathy M. appeals the Social Security Administration's denial of her application for disability insurance benefits, disabled widow's benefits, and supplemental security income. Plaintiff argues that the Administrative Law Judge erroneously found that Plaintiff's cardiac impairments did not meet or equal the requirements of Listing 4.04 and alleges various other deficiencies with the ALJ's decision. Plaintiff's arguments are full of boilerplate recitations of law, contain little actual substantive concerns in relation to her specific case, and fall short of necessitating remand. The ALJ supported her decision with substantial evidence. Therefore, Plaintiff's request for remand [Filing No. 16] is denied.

I.      **Background**

On April 27, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Plaintiff also protectively filed a Title II application for disabled widow's benefits and a Title XVI application for supplemental security income on July 3, 2019. In all applications, Plaintiff alleged her disability began on January 11, 2015. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. Before reaching step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 11, 2015, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: coronary artery disease status post-bypass and obesity. [Filing No. 14-2, at ECF p. 4.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or series of impairments that medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite her limitations. The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations: "[Plaintiff] can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolding. She can frequently balance, stoop, kneel, crouch, and crawl. [Plaintiff] can have no more than occasional exposure to extremes of cold." [Filing No. 14-2, at ECF p. 8.]

2

At step four, the ALJ concluded that Plaintiff could perform past relevant work as a cashier, because this work would not require performance of work-related activities precluded by Plaintiff's RFC. In addition, the vocational expert testified that an individual with Plaintiff's limitations would be able to perform representative occupations such as routing clerk, marking clerk, and inspector. Accordingly, the ALJ concluded that Plaintiff was not disabled.

### III.    Discussion

Plaintiff raises various concerns with the ALJ's decision. The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

####    A.    Cardiac Impairments

Plaintiff argues that the ALJ's analysis of her cardiac impairments is inadequate. Specifically, Plaintiff claims that the ALJ failed in the listing analysis at step three by finding that her coronary artery disease does not meet or medically equal Listing 4.04 regarding ischemic heart disease. Plaintiff boldly asserts that "there is no analysis at all; rather, a simple list of the requirements of the listing and a conclusion that the evidence of record does not establish that [Plaintiff] meets or equals them." [Filing No. 16, at ECF p. 16.] Plaintiff even

goes so far as to claim that the ALJ's finding was only two sentences long. [Filing No. 16, at ECF p. 16.]

Plaintiff's claim regarding the length of the ALJ's analysis is easily refuted with a cursory glance at the ALJ's decision. The ALJ found that Plaintiff's ischemic heart disease did not meet or medically equal Listing 4.04, stating:

> While [Plaintiff] has coronary artery disease with symptoms due to myocardial ischemia that requires a regimen of prescribed treatment, she does not have the requisite findings. First, the medical evidence of record does not contain evidence of a sign-or symptom-limited exercise tolerance test demonstrating at least one of the required findings at a workload equivalent to 5 METs or less. Second, she has not had three ischemic episodes, each requiring revascularization or not amenable to revascularization, within a consecutive twelve-month period. More than twelve months lapsed between her January 2016 and March 2017 heart attacks. Lastly, she does not have coronary artery disease, demonstrated by angiography or other appropriate medically acceptable imaging. Additionally, a medical consultant has not concluded that a performance of exercise tolerance testing would present a significant risk to the individual with the requisite angiographic evidence and resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

[Filing No. 14-2, at ECF p. 24.] The ALJ's analysis of Plaintiff's cardiac impairment is obviously more than just two sentences and contains more than a list of the requirements of the listing. As the Commissioner correctly emphasizes, Plaintiff's argument is "long on boilerplate and short on application to the facts of this case." [Filing No. 17, at ECF p. 9.]

Plaintiff additionally contends that the ALJ erred by not looking beyond Plaintiff's first two heart attacks and because the ALJ is in no position to make medical determinations. Listing 4.04(B) requires three separate ischemic episodes, each requiring revascularization or not amenable to revascularization, within a consecutive 12-month period. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.04(B). Plaintiff seemingly concedes that the ALJ found that Plaintiff's January 2016 acute myocardial infarction and March 2017 heart attack were not within the requisite 12-month period. Plaintiff then cites two subsequent cardiac-related events in July

and October 2017 that the ALJ did not address.  Plaintiff was seen in July 2017 on an urgent basis due to exertional chest discomfort, and in October 2017 she was hospitalized after presenting with left-sided chest pain with radiation to her jaw.  [Filing No. 14-8, at ECF p. 7; Filing No. 14-9, at ECF p. 202.]

While the ALJ did not refer to either of these later cardiac events and interventions in her listing analysis, Plaintiff has not explained how they satisfied all the requirements of Listing 4.04(B).  In describing both subsequent instances, Plaintiff makes no mention of whether a revascularization occurred, which is a separate and distinct requirement under 4.04(B), and otherwise makes no attempt to meet her burden to tie the record medical evidence to all the actual elements of Listing 4.04.  *See e.g., Wilder v. Kijakazi*, No. 21-1607, __ F.4th. __, 2022 WL 34780, at *5 (7th Cir. Jan. 4, 2022) ("[Plaintiff] Wilder bears the burden of proving that her impairments are so severe that they prevent her from performing any substantial gainful activity."); Listing 4.04(E)(9)(f) ("In 4.04B, each of the three ischemic episodes must require revascularization or be not amenable to treatment.  Revascularization means angioplasty (with or without stent placement) or bypass surgery.  However, reocclusion that occurs are a revascularization procedure but during the same hospitalization and that requires a second procedure during the same hospitalization will not be counted as another ischemic episode.  Not amenable means that the revascularization procedure could not be done because of another medical impairment or because the vessel was not suitable for revascularization.").  Nor has Plaintiff demonstrated the need or authority for additional medical expert opinion regarding equivalence.

SSR 17-2p contains a deferential standard with respect to the ALJ's obligation to articulate and support a finding of no medical equivalence.  SSR 17-2 p states:

5

> "[I]f an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding."

SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). *See also Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020) ("When evaluating whether an impairment is presumptively disabling under a list, the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." (Internal citation and quotation marks omitted)).

The ALJ's analysis of Listing 4.04 was more than perfunctory, and sufficient evidence supports the ALJ's determination that Plaintiff's coronary artery disease lacked all the requirements of a presumptively disabling impairment under Listing 4.04(B). The ALJ specifically mentioned Listing 4.04 and did more than just regurgitate the requirements of the listing. The ALJ's decision contains a proper analysis of the requirements and why Plaintiff did not meet them, and Plaintiff has not set forth evidence that she otherwise met the requirements of the listing. Thus, this is not a basis to remand.

### B.     Subjective Symptom Evaluation

Plaintiff claims that the ALJ provided erroneous reasoning to discredit Plaintiff's statements regarding her subjective symptom assessment. The regulations describe a two step-process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-

6

3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (internal citations omitted).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Filing No. 14-2, at ECF p. 25-26.]

The ALJ properly assessed Plaintiff's subjective allegations. The ALJ considered Plaintiff's subjective allegations as to her symptoms and the severity of those symptoms, including her claims of severe fatigue, that she often became winded after activity, and that she experienced chest pain. [Filing No. 14-2, at ECF p. 25.] She also noted Plaintiff's treatment history, including cardiologic treatment, bypass surgery, and various medications with a lack of reported side effects. Moreover, the ALJ pointed to Plaintiff's normal objective test results, including a November 2016 electrocardiogram that was within normal limits and showed sinus rhythm and treatment records indicating no reported significant angina-like symptoms or reports of congestive heart failure, shortness of breath, or chest pain after July 2017. Finally, in addition to all of this, the ALJ discussed the wide range of activities of daily living in which Plaintiff engaged, including her testimony that she had some exertional limitations in performing those activities, and the record medical opinions. [Filing No. 14-2, at ECF p. 25-26.]

Once again, the arguments Plaintiff raises in relation to this issue are full of boilerplate statements of law or generalizations. Plaintiff points to no evidence that the ALJ supposedly

overlooked or that would support a finding of disability. For instance, while Plaintiff characterizes her activities of daily living as minimal and claims the ALJ did not consider the qualified manner in which she performed those activities, there is no indication that the ALJ improperly equated Plaintiff's activities of daily living with her ability to do full time work, or that she placed improper emphasis on them. *See, e.g., Jeske*, 955 F.3d at 592 ("An ALJ may not equate activities of daily living with those of a full-time job. But an ALJ is not forbidden from considering statements about a claimant's daily life. In fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." (Internal citation omitted)). And nothing about the ALJ's decision gives the appearance that the ALJ equated Plaintiff's daily activities with her ability to do full-time work.

The ALJ considered Plaintiff's treatment history, subjective statements and statements to medical providers, her normal EKG and the record medical opinions, and her activities of daily living, and found that all of these factors supported an RFC of light work with additional limitations. The ALJ's subjective symptom assessment was proper.

      **C.**    **Substantial Evidence to Support RFC**

The Court now turns to Plaintiff's argument that the ALJ did not adequately explain the rationale behind her finding of Plaintiff's RFC. The ALJ concluded that Plaintiff was capable of light work, except she can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolding; frequently balance, stoop, kneel, crouch, and crawl; and can have no more than occasional exposure to extremes of cold. [Filing No. 14-2, at ECF p. 24.] Plaintiff claims that the ALJ was mandated to provide a function-by-function assessment and failed to do so. [Filing No. 16, at ECF p. 24.]

While the ALJ's RFC assessment must identify the individual's functional limitations or restrictions and assess work-related abilities on a function-by-function basis, "the lack of an explicit 'function-by-function written account' of a claimant's RFC 'does not necessarily prevent [a court] from concluding that the ALJ appropriately considered a function." *Brent V. v. Saul*, No. 1:19-cv-4584-JPH-DLP, 2021 WL 1084870, at * 5 (S.D. Ind. Mar. 19, 2021) (*quoting Jeske*, 955 F.3d at 595-96)). *See also Michael I v. Saul*, No. 1:19-cv-4988-SEB-TAB, 2020 WL 9349552, at *4 (S.D. Ind. July 21, 2020), *report and recommendation adopted*, No. 1:19-cv-4988-SEB-TAB, 2021 WL 1135836 (S.D. Ind. Mar. 24, 2021) ("[T]he Seventh Circuit has maintained that the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of the claimant's symptoms and medical source opinions is sufficient[.]" (Internal citation and quotation marks omitted)); *Ralph R. v. Saul*, No. 2:20-cv-35-JMS-MJD, 2020 WL 5640441, at *8 (S.D. Ind. Aug. 18, 2020) ("In crafting the RFC, the ALJ did not perform a function-by-function analysis. However, the Court finds that the ALJ's explanation and decision shows that she considered Ralph R.'s ability to perform all seven functions.").

Plaintiff's argument is largely, once again, boilerplate recitation of the law. The most detailed part of Plaintiff's argument is her claim that the RFC as stated by the ALJ "falls short because it fails to account for the evidence in the record regarding serious limitations, especially with her ability to lift, carry, and walk throughout the day." [Filing No. 16, at ECF p. 25.] But this argument is likewise conclusory and, thus, waived. *See, e.g., Krell v. Saul*, 931 F.3d 582, 586 n. 1 (7th Cir. 2019) (perfunctory and undeveloped arguments are waived). Plaintiff does not otherwise recite any evidence that the ALJ supposedly did not take into account or provide any specific shortcomings with the ALJ's opinion. In formulating Plaintiff's RFC, the ALJ provided a narrative discussion of the medical and nonmedical evidence and assessed Plaintiff's abilities in

accordance with the SSA's requirements and regulations. Plaintiff does not raise any issues with the ALJ's consideration of the record medical opinions, or the weight given to those opinions. She cites to no limitations that were overlooked, nor does she identify any of her limitations by name. Accordingly, this argument is unavailing.

### D. Past Relevant Work

Finally, Plaintiff contends that the ALJ and vocational expert erred in concluding that Plaintiff could return to her past relevant work without an appropriate discussion of the requirements. [Filing No. 16, at ECF p. 26.] The ALJ found that Plaintiff could perform past relevant work as a cashier. [Filing No. 14-2, at ECF p. 2.]

"To determine if a claimant is capable of performing his or her past relevant work, an ALJ must compare the demands of the claimant's past occupation with his or her present capacity." *Steward v. Bowen*, 858 F.2d 1295, 1299-1300 (7th Cir. 1988). The ALJ's decision sets forth this standard and notes that the ALJ asked an impartial vocational expert if a hypothetical person of Plaintiff's age, education, and past work experience, with her RFC, would be able to perform her past relevant work. The VE testified that Plaintiff was able to perform her past relevant work as a cashier as generally performed, even with the exertional, postural, and environmental limitations outlined by the ALJ.

Plaintiff has not shown that she could not perform past relevant work. The burden is on Plaintiff for steps one through four of the SSA sequential evaluation process; after that, it moves to the Commissioner. *See, e.g., Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) ("The sole issue in this case concerns the application of Step 5 of the disability benefits analysis, and at that stage of the analysis, the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy."). As noted above, the ALJ supported her step four finding

with substantial evidence when she relied on the unchallenged, uncontradicted VE testimony that Plaintiff could return to her past relevant work as a cashier as the position is generally performed. Plaintiff was represented by counsel at the hearing, who stipulated to the VE's qualifications, had the opportunity to question the VE, and did not challenge the VE's testimony.

Plaintiff does not raise any challenges to the VE's testimony even now. Rather, she simply claims that the ALJ failed to prove "any particularized analysis of [Plaintiff]'s previous job and that "[t]he exertional, non-exertional, strength, stamina, manipulative requirements or environmental components of the job are not described in the written decision." [Filing No. 16, at ECF p. 27.] Plaintiff argues that *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984) was reversed for "similar error." [Filing No. 16, at ECF p. 27.] In *Strittmatter*, the ALJ concluded, without any further analysis, that the plaintiff would have the capability of sedentary work activity, and her former work involved sedentary work, so she could return to her former job. *Id.*

Unlike *Strittmatter*, in Plaintiff's case the ALJ sufficiently supported her finding that Plaintiff could perform past relevant work as a cashier. In addition to relying on the VE's unchallenged testimony, Plaintiff likewise ignores the fact that a claimant is not disabled at step four if she can perform her past relevant work either (1) as she actually performed it, or (2) as generally performed in the national economy. *See* 20 C.F.R. § 404.1560(b). The ALJ presented the VE with a hypothetical question that reflected Plaintiff's RFC and accounted for the limitations she found supported by the evidence. The VE concluded that Plaintiff could perform her past relevant work as generally performed even under those limitations.

Moreover, Plaintiff completely ignores the portion of the ALJ's decision in which she made an alternative step five finding and concluded that there were also a significant number of

11

jobs that Plaintiff could perform in the national economy, including (1) routing clerk; (2) marking clerk; and (3) inspector. [Filing No. 14-2, at ECF p. 29-30.] Plaintiff never even mentions this finding in her brief in support of appeal, much less contests it.

For all these reasons, Plaintiff has shown no reversible error and failed to satisfy her burden at step four.

## IV.    Conclusion

The ALJ supported her decision with substantial evidence. In finding Plaintiff capable of light work, subject to additional limitations, the ALJ considered a host of factors, including Plaintiff's subjective symptoms, her treatment history, the effectiveness of medications, imaging results and other clinical examination findings, and the record medical opinions. Plaintiff has shown no reversible error. Therefore, Plaintiff's request for remand [Filing No. 16] is denied.

Date: 1/13/2022

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email